SEP 2 0 2002

THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**F I L E D**

SEP 2 0 2002

MICHAEL E. KUNZ, Clerk
By ___IY___ Dep. Clerk

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY

and

STATE FARM FIRE AND CASUALTY
INSURANCE COMPANY

vs.

MIDTOWN MEDICAL CENTER, INC.,
TABOR CHIROPRACTIC, INC.,
RONALD NESTEL,
SIMON FISHMAN,
FRANK SOLOMON, D.C.,
PAUL BOVE, D. C., and
PHYSICIANS MANAGEMENT
    COMPANY, INC.,

CIVIL ACTION  02-7389

JURY TRIAL DEMANDED

## COMPLAINT

Plaintiffs, State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Insurance Company, (hereafter referred to collectively as "State Farm"), by their attorneys, Goldberg, Moore & Miller, P.C., bring this action against defendants, Midtown Medical Center, Tabor Chiropractic, Inc., Physicians Management Company, Inc., Ronald Nestel, Simon Fishman, Frank Solomon, D.C., and Paul Bove, D.C., and allege violations of the Racketeering Influenced and Corrupt Organizations Act (RICO), Corporate Practice of Medicine Doctrine, Pennsylvania Insurance Fraud Statute and various common law causes of action. In support of their claims, Plaintiffs state the following:

## I. SUMMARY OF COMPLAINT

1.    This Complaint is brought by State Farm to recover damages from defendants, Midtown Medical Center, Tabor Chiropractic, Inc., Ronald Nestel, Simon Fishman, Frank Solomon, D.C., Paul Bove, D.C., and Physicians Management Company, Inc.

2.    Defendants, their agents and employees were active participants in a scheme to defraud State Farm by producing and submitting fraudulent medical reports, bills and other documents and



representations which were intended to obtain payment from State Farm for medical treatment allegedly provided to individuals insured by State Farm.

3.     Defendants' scheme to defraud State Farm also involved producing and submitting fraudulent medical reports, bills and other documents and representations which were intended to assist in obtaining payment from State Farm on behalf of individuals insured by State Farm claiming injuries as the result of accidents allegedly caused by individuals without motor vehicle insurance (hereinafter "uninsured motorists") or insufficient motor vehicle insurance (hereinafter "underinsured motorists").

4.     Defendants' scheme to defraud State Farm further involved producing and submitting fraudulent medical reports, bills and other documents and representations which were intended to assist in obtaining payment from State Farm on behalf of individuals who claimed bodily injuries as the result of accidents allegedly caused by individuals insured by State Farm.

5.     The relief sought by State Farm against defendants includes compensatory damages, payments made by State Farm to defendants and individuals allegedly treated by defendants, claims handling expenses, peer review expenses, treble damages pursuant to 18 U.S.C. §1964(c), punitive damages, costs of investigation and suit, interest and attorneys fees.

6.     The time relevant to this action is the period from in or about 1998 to the present.

## II. **THE PARTIES**

7.     Plaintiffs are corporations existing under the laws of Illinois with principal places of business in Bloomington, Illinois. Plaintiffs are duly organized and licensed to engage in the writing of automobile insurance policies in the Commonwealth of Pennsylvania. Plaintiffs provide insurance coverage to their customers for, inter alia, medical payments, uninsured motorist benefits, underinsured motorist benefits and liability for bodily injury arising out of automobile accidents.

8.     Midtown Medical Center (hereafter "Midtown") was and is a Pennsylvania Business Corporation with a place of business located at 425-427 West Tabor Road, Philadelphia, Pennsylvania. Midtown operates in its corporate capacity. During the relevant time period, the business of Midtown was to provide chiropractic, medical and physical therapy treatments to persons injured in accidents.

- 2 -

9.      Tabor Chiropractic, Inc. (hereafter "Tabor") was and is a Pennsylvania Business Corporation with a place of business located at 425-427 West Tabor Road, Philadelphia, Pennsylvania. Tabor operates in its corporate capacity and is a successor in interest to defendant, Midtown.  During the relevant time period, the business of Tabor was to provide chiropractic, medical and physical therapy treatments to persons injured in accidents.

10.     Defendant, Ronald Nestel (hereafter "Nestel"), is a citizen of Pennsylvania with a place of business at 427 West Tabor Road, Philadelphia, Philadelphia.  At all relevant times, Nestel was and continues to be a proprietor, owner, officer, and shareholder in Midtown and Physicians Management Company, Inc.  He has never been licensed to practice medicine or physical therapy in the Commonwealth of Pennsylvania or any other state in the United States.

11.     Defendant, Frank Solomon , D.C. (hereafter "Solomon "), is an adult individual who resides at 3400 Red Lion Road, Philadelphia, Pennsylvania.  At all relevant times, Solomon was and continues to be a proprietor, owner, officer, employee and/or shareholder in Midtown and Tabor.

12.     Defendant, Simon Fishman, a/k/a Stephen Baker (hereafter "Fishman"), is an adult individual who resides at 3860 Brookdale Avenue, Huntingdon Valley, Pennsylvania.   At all relevant times, Fishman was and continues to be a proprietor, owner, officer, employee and/or shareholder in Midtown and Tabor.

13.     Defendant, Paul Bove, D.C. (hereafter "Bove"), is an adult individual who resides at 434 Dartmore Road, Schwenksville, Pennsylvania and with a place of  business located at Baker Chiropractic, 1246 West Main Street, Norristown, Pennsylvania.  At all relevant times, Bove was and continues to be a proprietor, owner, officer, employee and/or shareholder in Midtown.

14.     Defendant, Physicians Management Company, Inc. (hereafter "PMC, Inc."), was and is a Pennsylvania business corporation with a place of business located at 427 West Tabor Road, Philadelphia, Pennsylvania.  During the relevant time period, the business of PMC, Inc., was to provide billing and physician management services to persons treating at Tabor.

### III. **VENUE AND JURISDICTION**

15.     This court has jurisdiction over this matter pursuant to 28 U.S.C. §1332, based upon the diverse citizenship of the parties and the amount in controversy which exceeds $75,000.00, exclusive of interest and costs.

16.     This court has jurisdiction over this matter pursuant to a Federal question, 28 U.S.C. §1331, based upon the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1964(c).

17.     This court has jurisdiction over this matter pursuant to 28 U.S.C. §1332, based upon the pendent and ancillary jurisdiction of this Court.

18.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(a).


### IV. **FACTS**

19.     During the relevant times, the defendants, their agents and employees without the knowledge and consent of State Farm, agreed and conspired together to devise and participate in a scheme to defraud State Farm by means of false and fraudulent representations.

20.     During the relevant times, Fishman and Nestel, established and operated the Midtown Medical Centers and named Nestel as the medical center's sole proprietor and corporate officer, for the sole purpose of creating a vehicle through which funds from the medical center could be paid to them.

21.     During the relevant times, Fishman and Nestel established and operated Tabor and named Solomon as the medical center's sole proprietor and corporate officer, for the sole purpose of creating a vehicle through which funds from the medical center could be paid to them.

22.     During the relevant times, Fishman and Nestel established PMC, Inc. and named Nestel as PMC Inc.'s sole proprietor and corporate officer, for the sole purpose of creating a vehicle through which funds from the medical centers could be paid to them.

23.  During the relevant times, Fishman and Nestel owned, operated, controlled and managed Midtown/Tabor although neither Fishman nor Nestel was licensed or eligible to be licensed in the practice of chiropractics, physical therapy, or medicine.

24.     Despite the lack of a license to practice chiropractics, physical therapy or medicine, and the ineligibility to receive such a license, Nestel and Fishman engaged in the practice of medicine by engaging in the acts described below.  Specifically:

    a.     owned, controlled and held shares in Midtown/Tabor medical centers

    b.     employed and paid licensed individuals to treat patients;

    c.     constructed and maintained offices for the diagnosis and treatment of human ailments;

    d.     held Midtown and Tabor out to the public as being engaged  in the diagnosis and treatment of human ailments;

    e.     adopted and used the name "Midtown Medical Center" and "Tabor Chiropractic, Inc." thereby indicating that they were engaged in the treatment of human ailments or conditions as a  business; and

    f.     received fees/reimbursements for patient care services performed on behalf of Midtown and Tabor by its employees with charges for services fixed by defendants.

25.     By engaging in the acts heretofore described, defendants Fishman and Nestel's conduct extended beyond providing mere management and administrative services to licensed medical providers. Instead, defendants Fishman and Nestel actually became medical providers under the auspices of Midtown and Tabor, the licensed physicians employed to perform patient care services acted as their agents and employees. In this manner, defendants Nestel and Fishman engaged in the practice of medicine.

26.     By engaging in the practice of medicine without a license, defendants Nestel and Fishman violated the Medical Practice Act, the Chiropractic Practice Act and the Business Corporation Law.

27.     Because defendants Nestel and Fishman operated Midtown and Tabor  in violation of Pennsylvania law, Midtown and Tabor had no legal right to collect fees for the patient care services performed. Accordingly, the patients who allegedly received the services had no obligation to pay Midtown and Tabor's bills for these services.

28.     Because the patients who allegedly received services at Midtown and Tabor had no obligation to pay the bills for these services, State Farm could not have had any legal obligation to pay these bills to or on behalf of its insureds.

29.     During the relevant times, Nestel, Fishman and other defendants recruited individuals who had been in accidents to obtain purported medical treatment at Midtown and Tabor. Many of these individuals were either insured by State Farm or claimed injuries as the result of motor vehicle accidents involving State Farm insureds.

30.     It was a further part of the conspiracy and scheme to defraud that defendants, Solomon and Bove would have an initial evaluation with the participants in the accidents and would "diagnose" their alleged injuries at Midtown and Tabor.

31.     It was a further part of the conspiracy and scheme to defraud that defendants Solomon and Bove purported to conduct physical examinations of these individuals at Midtown and Tabor and prescribed treatment allegedly to be provided at Midtown and Tabor.

32.     It was a further part of the conspiracy and scheme to defraud that many of the medical examinations, physical therapy and other treatments allegedly provided to these individuals at Midtown and Tabor were, in fact, never performed.

33.     It was further part of the conspiracy and scheme to defraud that individuals supposedly receiving treatment at Midtown and Tabor were allegedly referred by Solomon and Bove to consulting physicians for physiatric and neurological examinations.

34.     It was further part of the conspiracy and scheme to defraud that many of the examinations with the consulting physicians were, in fact, billed in a manner that inaccurately described the service level for the purpose of securing a higher reimbursement from State Farm.

35.     It was further part of the conspiracy and scheme to defraud that payments made by State Farm for the consultations made by State Farm were, without the knowledge or consent of State Farm, divided between defendants and the consulting doctors under an unapproved fee arrangement.

36.     It was a further part of the conspiracy and scheme to defraud that false and fraudulent medical reports, bills and other records were prepared by defendants and sent to State Farm to obtain payment on behalf of Midtown, Tabor and the other defendants. These reports, bills and other records were false and fraudulent in that they concerned physical examinations and physical therapy treatments at Midtown and Tabor which were never provided and some concerned areas of the body not injured.

37.    It was a further part of the conspiracy and scheme to defraud that false and fraudulent medical reports, bills and other records were produced by defendants to assist individuals insured by State Farm in obtaining payment from State Farm for alleged physical injuries allegedly arising out of accidents involving uninsured or underinsured motorists.   These reports, bills and other records were false and fraudulent in that they concerned physical examinations and physical therapy treatments at Midtown and Tabor which were never provided and some concerned areas of the body not injured.

38.    It was a further part of the conspiracy and scheme to defraud that false and fraudulent medical reports, bills and other records were produced by defendants to assist defendants in obtaining payment from State Farm for alleged physical injuries arising out of accidents allegedly caused by individuals insured with State Farm. These reports, bills and other records were false and fraudulent in that they concerned physical examinations and physical therapy treatments at Midtown and Tabor which were never provided and some concerned areas of the body not injured.

39.    It was a further part of the conspiracy and scheme to hire employee chiropractors, physicians and other non-physician individuals to provide medical treatment including diagnostic testing which was billed as being provided by a chiropractor or physician.

40.    Defendants issued bills and/or invoices in the name of Midtown and Tabor for the patient services allegedly performed by their licensed and unlicenced employees, which utilized certain CPT codes to document the level of service and nature of service to secure reimbursement payments from State Farm. Under this system, the provider utilizes CPT codes to report services and treatment for reimbursement. In the event that a specific service or treatment does not have a corresponding code, an unlisted procedure code is used and the amount of the payment may not exceed eighty percent (80%) of the providers usual and customary charge. 75 Pa. C.S.A. §1797, *et al*.

41.    Defendants routinely utilized CPT codes for particular services, including initial office visits, certain therapies, and intermediate office visits, that inaccurately described the service level for the purpose of securing a higher reimbursement from State Farm.  State Farm reasonably relied upon representations set forth on defendants' bills and records to form the payment decisions.

42.    Defendants routinely submitted bills to State Farm for payment which included medically unnecessary and redundant treatment and tests and ordered unnecessary consults.

43.    Defendants collected and retained a portion of the insurance proceeds paid by insurance companies such as State Farm for the patient care services performed at Midtown and Tabor.

44.    Between 1998 and the present, defendants issued or caused to be issued bills and medical records in the name of Midtown and Tabor which were submitted to State Farm as part of first party medical payments.

45.    Between 1998 and the present, State Farm paid out over $213,193.00 on medical payments in which bills of Midtown and Tabor were submitted as part of individual claimants' damages.

46.    Between 1998 and the present, defendants issued or caused to be issued bills and medical records in the name of Midtown and Tabor which were submitted to State Farm in support of uninsured/under insured motorist and liability claims.

47.    Between 1998 and the present, State Farm paid out over $630,554.00 on medical payments in which bills and records of Midtown and Tabor were submitted as part of individual claimants' damages.

48.    State Farm believes and, therefore, avers that the billing submitted by defendants described above contain fraudulent misrepresentations intended to extract payments from plaintiff in violation of the terms of 75 Pa. C.S.A. §1701 *et seq* and other applicable Pennsylvania law.

49.    During the relevant times, in reasonable reliance on and in belief of the truth of the medical reports and bills from defendants, State Farm made payments to Midtown and  Tabor.  Further, State Farm made payments to individuals insured by State Farm involved in alleged accidents with uninsured and/or underinsured motorists in reasonable reliance on the medical reports and bills from defendants, Midtown and Tabor. Further, State Farm made payments for alleged bodily injuries to individuals involved in accidents allegedly caused by State Farm insureds in reasonable reliance on the medical reports and bills from Midtown, Tabor and the other defendants.  Plaintiffs have also expended sums of money on investigation, claims processing and legal defense in connection with the aforesaid payments.

50.    During the relevant times and in furtherance of and for the purpose of executing the scheme and artifice to defraud, the defendants on numerous occasions used and caused to be used mail depositories of the United States Postal Service and wires by both placing and causing to be placed

-8-

letters, bills and other mailable matter in said depositories and by removing and causing to be removed letters and other mailable matter from said depositories and by the use of facsimile machines. Said use of the mails included, but was not limited to, the following:

(a)    Medical bills sent by Midtown to State Farm on June 11, 1999 for Lillian Parson.

(b)    Insurance claim form sent by Midtown to State Farm on June 16, 1999   for claimant Richards.

(c)    Medical bills sent by Midtown  to State Farm on October 31, 1999 for treatment to Donnell Wessells.

(d)    Check dated August 19, 2000 received by Midtown from State Farm for services rendered to Joyce Alston.

(e)    Check dated November 2, 2000 in the amount of $348.67 received by Midtown from State Farm for services rendered to R.B. Fayell from September 20 through October 16, 2000.

(f)    Checks dated October 13, 2000 and January 18, 2001 received by Dr. Solomon from State Farm totaling $3,460.76 for services rendered to Elsie Clark.

(g)    Fax from Midtown/Tabor to claimant Richard's attorney, dated September 14, 2001.

(h)    Medical bills sent by Tabor to State Farm in December 2001 for claimant Seawright.

Each use of the mails and wires in connection with the scheme and artifice to defraud constitutes the offense of mail and wire fraud as proscribed and prohibited by 18 U.S.C. §1343.

51.    During the relevant times, in connection with the activities of all defendants giving rise to this action, all defendants conspired to engage in the various activities and aided and abetted one another in the said activities.

52.    During the relevant times, in connection with the activities of all defendants giving rise to this action, the defendants acted with malice, intent and knowledge.

53.    During the relevant times, in connection with the activities of all defendants giving rise to this action, defendants, intentionally acted to fraudulently conceal their ownership and proprietary interest in Midtown and Tabor in order to insulate themselves from liability for the fraudulent and illegal activities being conducted by the defendants.

54.    Plaintiffs were directly injured in their business and property in an undetermined amount by defendants' misrepresentations, violations of law, fraudulent conduct and other acts and omissions committed by the defendants as set forth above in paragraphs 19 through 53.  Such injury includes:  the

- 9 -

deprivation of the ability to conduct the plaintiffs' insurance business on the basis of true, accurate and complete assessments of the numbers and amounts of legitimate compensable claims; the loss of funds unwittingly paid pursuant to false and fraudulent claims for medical benefits, uninsured motorist benefits, underinsured motorist benefits and liability for bodily injury, which funds enabled the enterprise to continue its operations and enhanced the enterprise's ability to further harm State Farm's business and carry out its racketeering activity; the expenses incurred in the review, adjustment and payment of the claims created and supported through the enterprise; the losses and financial expenses which have been and now are being incurred to create, establish and carry out systems and policies to detect and discover false, fraudulent and inflated claims; the hiring of claims adjusters, consultants and attorneys to detect and rebut said claims and other injury as may be proved at the trial hereof.

## COUNT I
## Fraud Against All Defendants

55.    State Farm incorporates herein by reference the allegations set forth in paragraphs 1 through 54 of this Complaint.

56.    The misrepresentations, violations of law, fraudulent conduct and other acts and omissions  committed by the defendants as set forth above in paragraphs 19 through 53 constitute false and fraudulent representations.

57.    Defendants intended that State Farm would be induced by such false and fraudulent representations to provide payment to defendants and/or to individuals making claims with State Farm for uninsured motorist benefits, underinsured motorist benefits and liability for bodily injury.

58.    State Farm justifiably relied on the fraudulent misrepresentations made by the defendants in making payment to defendants and to individuals who had allegedly been treated by defendants in the belief that such individuals had received medical treatment from defendants and/or had suffered injuries as the result of motor vehicle accidents.

59.    As a result of the fraudulent misrepresentations by defendants, plaintiff suffered injury as set forth above in paragraph 54.

60.    Further, the fraudulent misrepresentations by defendants were made with malice, vindictiveness and wanton disregard for the rights of State Farm, thus entitling plaintiff to recovery of exemplary and punitive damages.

WHEREFORE, State Farm prays this Court enter judgment in favor of plaintiffs and against all defendants, jointly and/or severally, for an amount exceeding $75,000.00, compensatory and punitive damages plus any additional relief this court deems proper.

## COUNT II

**Fraud Against Defendants Nestel and Fishman**
**for Violation of Corporate Practice of Medicine Doctrine,**
**Medical Practice Act, Chiropractic Practice Act, and Business Corporation Law**

61.    State Farm incorporates herein by reference the allegations set forth in paragraphs 1 through 60 of this Complaint.

62.    The Medical Practice Act of 1985 3163 P.S. § 422.1, *et seq* defines medicine and surgery as "the art and science of which the objectives are the cure of diseases and the preservation of the health of man, including the practice of the healing art with or without drugs, except healing by spiritual means or prayer." 63 P.S. §422.2. Similarly, the healing art is defined as "the science and skill of diagnosis and treatment in any manner whatsoever of disease or any ailment of the human body." *Id.* The unauthorized practice of medicine is defined as:

No person other than a medical doctor shall engage in any of the following conduct, except as authorized or exempted in this act:

(1)    Practice medicine and surgery.

(2)    Purport to practice medicine and surgery.

(3)    Hold forth as authorized to practice medicine and surgery. . .

(4)    Otherwise hold forth as authorized to practice medicine and surgery.

63 P.S.§422.10.

63.    The Medical Practice Act provides that a person who violates any of these provisions is subject to prosecution for a third degree misdemeanor and may face civil penalties. 63 P.S. §422.39.

64.     The Chiropractic Practice Act, 63 P.S. §625.101, et seq. contains similar provisions that bar the practice of chiropractics and physical therapy without a license and prohibits assisting unlicenced persons to practice. 63 P.S. §625.506(10).

65.     Likewise, 15 Pa.C.S.A. §2923 of the Business Corporation Law, provides that a professional corporation may only be owned by a person licensed in that profession and §2924 provides that the professional services of the corporation may only be provided by licensed persons.

66.     The prohibition against the unlicenced practice of medicine bars lay-owned business corporations from practicing medicine and from employing licensed physicians to treat patients on the corporation's behalf. Neill v. Gimbel Bros., Inc., 330 Pa. 213, 199 A.178 (1938). See also, Opinion Pa. Atty. Gen., The Thomas Diagnostic Clinic, 30 Pa. Dist. R. 778 (1921) (advising the Honorable Cyrus E. Woods that a corporation may not be formed for the practice of medicine).

67.     The employment of physicians by lay-owned business corporations, known as the corporate practice of medicine, is illegal because the acts of the physicians are attributable to the corporate employer, who cannot obtain a medical license. Neill, 330 Pa. at 219.

68.     Despite the lack of a license to practice medicine, and the ineligibility to receive such a license, Nestel and Fishman engaged in the practice of medicine by engaging in the acts described below. Specifically:

        a.     owned, controlled and held shares in Midtown/Tabor medical centers;

        b.     employed and paid licensed individuals to treat patients;

        c.     constructed and maintained offices for the diagnosis and treatment of human ailments;

        d.     held Midtown and Tabor out to the public as being engaged in the diagnosis and treatment of human ailments;

        e.     adopted and used the name "Midtown Medical Center" and "Tabor Chiropractic, Inc." thereby indicating that they were engaged in the treatment of human ailments or conditions as a business; and

        f.     received fees/reimbursements for patient care services performed on behalf of Midtown and Tabor by its employees with charges for services fixed by defendants.

69.     By engaging in the acts heretofore described, defendants Nestel and Fishman's conduct extended beyond providing mere management and administrative services to licensed medical providers.

Instead, defendants Nestel and Fishman, actually became medical providers under the auspices of Midtown and Tabor, the licensed physicians employed to perform patient care services acted as their agents and employees. In this manner, defendants Nestel and Fishman engaged in the practice of medicine.

70.    By engaging in the practice of medicine without a license, defendants Nestel and Fishman  violated the Medical Practice Act, the Chiropractic Practice Act and Pennsylvania law.

71.    Because defendants Nestel and Fishman operated Midtown and Tabor  in violation of Pennsylvania law, Midtown and Tabor had no legal right to collect fees for the patient care services performed. Accordingly, the patients who allegedly received the services had no obligation to pay Midtown and Tabor's bills for these services.

72.    Because the patients who allegedly received services at Midtown and Tabor had no obligation to pay the bills for these services, State Farm could not have had any legal obligation to pay these bills to or on behalf of its insureds.

73.    State Farm had no obligation to pay Midtown and Tabor's bills to or on behalf of its insureds/claimants in medical payment claims because the bills were billed illegally due to improper corporate structure and/or were outside of the scope of the licenses needed to issue the bills.

74.    State Farm had no obligation to pay Midtown and Tabor's bills as part of any insureds' uninsured/underinsured motorist claims because these bills did not constitute an item of damage which State Farm's insureds were legally entitled to recover from the owner or operator of an uninsured/underinsured automobile.

75.    State Farm would have had no obligation to pay Midtown and Tabor's bills on behalf of its insureds in liability claims because these bills would not be a proper part of damages claimed by the third party claimants in their claims against State Farm's insureds.

76.    Defendants Nestel and Fishman's conduct in misrepresenting that their corporations, Midtown and Tabor, were legal medical providers was intended to induce State Farm to make payments on behalf of its insureds and State Farm justifiably relied upon the representations of defendants Nestel, Fishman, Midtown and Tabor in making payment decisions.

77.     As a proximate result of defendants Nestel, Fishman, Midtown and Tabor's misrepresentations, State Farm suffered damages in the form of payments for medically unnecessary treatment and payments which exceeded its obligations pursuant to the terms of its policy and Pennsylvania law and suffered damages as set forth in paragraph 54.

WHEREFORE, State Farm prays this Court enter judgment in favor of State Farm and against Defendants, jointly and/or severally, for an amount exceeding $75,000.00, plus any additional relief this court deems proper.

## COUNT III

### Statutory Insurance Fraud
### Violations of 18 Pa.C.S. §4117 et. seq.
### Against All Defendants

78.     State Farm incorporates herein by reference the allegations set forth in paragraphs 1 through 79 of this Complaint.

79.     Plaintiffs are "insurers" within the meaning of 18 Pa.C.S. §§4117(a)(2), (a)(3), (a)(5) and 4117(j).

80.     Each defendant is a "person" within the meaning of 18 Pa.C.S. §§4117(a)(2), (a)(3), (a)(5) and 4117(j).

81.     The medical reports, bills and other records produced by defendants are "statements" within the meaning of 18 Pa.C.S. §§4117(a)(2), (a)(3), (a)(5) and 4117(j).

82.     Each defendant has acted in violation of 18 Pa.C.S. §4117(a)(2), through the acts set forth above in paragraphs 19 through 53, by presenting or causing to be presented to State Farm statements forming a part of, or in support of, insurance claims which set forth false and fraudulent information concerning facts material to such insurance claims.

83.     Each defendant has acted in violation of 18 Pa.C.S. §4117(a)(3), through the acts set forth above in paragraphs 19 through 53, by knowingly and with an intent to defraud State Farm, assisting, abetting, soliciting and/or conspiring with others to prepare statements that were intended to be presented to State Farm in connection with, or in support of, insurance claims that set forth false and fraudulent information concerning facts material to such insurance claims.

84.    Each defendant has acted in violation of 18 Pa.C.S. §4117(a)(5) by knowingly benefitting, directly and/or indirectly, from the proceeds derived from violations of the provisions of 78 Pa.C.S. §4117(a)(2) due to the assistance, conspiracy and/or urging of other persons, including the other defendants.

85.    Each defendant has acted in violation of 18 Pa.C.S. §4117(a)(5) by knowingly benefitting, directly and/or indirectly, from the proceeds derived from violations of the provisions of 18 Pa.C.S. §4117(a)(3) as set forth above due to the assistance, conspiracy and/or urging of other persons, including the other defendants.

86.    Each defendant is the owner, administrator or employee of a health care facility within the meaning of 18 Pa.C.S. §4117(a)(6).

87.    Each defendant has acted in violation of 18 Pa. C. S. §4117(a)(6) by allowing the use of a health care facility by other persons, including the other defendants, in furtherance of the scheme and conspiracy to violate the provisions of 18 Pa.C.S. §4117(a)(2) and (a)(3), as set forth above.

88.    These acts of fraud were both related and continuous, thereby constituting a pattern of fraud under 18 Pa.C.S. §4117(g).

89.    Plaintiff was injured by the conduct of defendants as set forth above in paragraph 54.

WHEREFORE, pursuant to 18 Pa.C.S. §4117(g), State Farm demands that judgment be entered in their favor and against all defendants jointly and severally for compensatory damages, claims handling expenses, costs of investigation, interest and costs.

## COUNT IV

### Violation of RICO, 18 U.S.C.
### §§1962(c), 1964(c) Against All Defendants

90.    State Farm incorporates herein by reference the allegations set forth in paragraphs 1 through 89 of this Complaint.

91.    Plaintiffs are "persons" within the meaning of 18 U.S.C. §§1961(3) and 1964(c).

92.    Each defendant is a "person" within the meaning of 18 U.S.C. §§1961(3) and 1962(c).

93.    At all times material to this Complaint, defendants were associated in fact and thus an "enterprise" within the meaning of 18 U.S.C. §§1961(4) and 1962(c) (hereinafter "the enterprise").

94.    At all times material to this Complaint, the enterprise was engaged in and its activities affected interstate commerce, that is the facilities of interstate commerce including the United States mails, highways and telephone lines.

95..    At all times material to this Complaint, each defendant was employed by or associated with the enterprise.

96.    From in or about 1998 through in or about the present, defendants devised and participated in a scheme to defraud State Farm as set forth above in paragraphs 19 through 53.

97.    Each defendant conducted or participated directly or indirectly in the conduct of the enterprise's affairs through a pattern of racketeering activity consisting of, but not limited to, the multiple instances of mail and wire fraud as set forth above in paragraph 51.

98.    These acts of mail fraud were both related and continuous, thereby constituting a pattern of racketeering activity within the meaning of 18 U.S.C. §1961(5).

99.    The conduct of each of the defendants constitutes a violation of 18 U.S.C. §1962(c).

100.    Plaintiffs were directly injured in their business and property as set forth in paragraph 54 and by defendants' violations of 18 U.S.C. §1962(c).  Such injury includes:  the deprivation of the ability to conduct the plaintiffs' insurance business on the basis of true, accurate and complete assessments of the numbers and amounts of legitimate compensable claims; the loss of funds unwittingly paid pursuant to false and fraudulent claims for medical benefits, uninsured motorist benefits, underinsured motorist benefits and liability for bodily injury, which funds enabled the enterprise to continue its operations and enhanced the enterprise's ability to further harm State Farm's business and carry out its racketeering activity; the expenses incurred in the review, adjustment and payment of the claims created and supported through the enterprise; the losses and financial expenses which have been and now are being incurred to create, establish and carry out systems and policies to detect and discover false, fraudulent and inflated claims; the hiring of claims adjusters, consultants and attorneys to detect and rebut said claims and other injury as may be proved at the trial hereof.

WHEREFORE, pursuant to 18 U.S.C. §1964(c), State Farm demands that judgment be entered in their favor and against all defendants jointly and severally for compensatory damages trebled in accordance with the law, interest, costs, attorneys' fees and such other relief as the court shall deem appropriate.

## COUNT V

### Conspiracy To Violate RICO, 18 U.S.C. §1962(c)
### In Violation Of 18 U.S.C. §1962(d) Against All Defendants

101.    State Farm incorporates herein by reference the allegations set forth in paragraphs 1 through 100 of this Complaint.

102.    Plaintiffs are "persons" within the meaning of 18 U.S.C. §1961(3) and 1964(c).

103.    Each defendant is a "person" within the meaning of 18 U.S.C. §§1961(3) and 1962(c).

104.    At all times material to this Complaint, defendants were associated in fact and thus an "enterprise" within the meaning of 18 U.S.C. §§1961(4) and 1962(c).

105.    At all times material to this Complaint, the enterprise was engaged in and its activities affected interstate commerce, that is the facilities of interstate commerce including the United States mails, highways and telephone lines.

106.    At all times material to this Complaint, each defendant was employed by or associated with the enterprise.

107.    From on or about 1998 to in or about the present, defendants devised and participated in a scheme to defraud State Farm as set forth above in paragraphs 19 through 53.

108.    Each defendant conspired and agreed among themselves and with other co-conspirators to violate 18 U.S.C. §1962(c), that is to conduct or participate directly or indirectly in the conduct of the enterprise's affairs through a pattern of racketeering activity, including the numerous acts of mail and wire fraud as set forth above in paragraph 50.

109.    These acts of mail and wire fraud were both related and continuous, thereby constituting a pattern of racketeering activity within the meaning of 18 U.S.C. §1961(5).

110.    Said conduct constitutes a violation of 18 U.S.C. §1962(d).

111.    Plaintiffs were directly injured by the defendants in its business and property as set forth above in paragraphs 54 and 100.

WHEREFORE, pursuant to 18 U.S.C. §1964(c), State Farm demands that judgment be entered in their favor and against all defendants jointly and severally for compensatory damages, trebled in accordance with the law, interest, costs, attorneys fees and such other relief as the court shall deem appropriate.

## COUNT VI

## Unjust Enrichment Against All Defendants

112.    State Farm incorporates herein by reference the allegations set forth in paragraphs 1 through 111 of this Complaint.

113.    Defendants' retention of reimbursement amounts paid by State Farm was wrongful because these monies were obtained as a direct result of the violations, fraud, and other acts set forth in the preceding counts.

114.    State Farm has been harmed by defendants' acts in wrongfully obtaining and retaining these benefits because State Farm would not have paid defendants' bills if it had known at the time it paid these claims, that defendants acts were wrongful and  illegal.

115.    Defendants' retention of these benefits violates fundamental principles of justice, equity and good conscience.

116.    Additionally, defendants' retention of the excess amounts received from State Farm due to defendants' fraudulent billing practices is wrongful.

117.    State Farm has been harmed by defendants' misrepresentations which misled State Farm into paying excess amounts for services provided.

118.    Defendants have been unjustly enriched and to allow defendants to retain these amounts would violate fundamental principles of justice, fairness, equity and good conscience.

WHEREFORE, State Farm prays this Court enter judgment in favor of State Farm and against all defendants for an amount exceeding $75,000.00, plus any additional relief this court deems proper.

## COUNT VII

### Restitution for Mistaken Payment Against All Defendants

119.   State Farm incorporates herein by reference the allegations set forth in paragraphs 1 through 118 of this Complaint.

121.   When State Farm paid monies on medical payments, uninsured motorist and liability claims which included compensation for the bills defendants issued for patient care services provided at Midtown and Tabor, it did so under the mistaken factual belief that the bills submitted to it from Midtown and Tabor represented medically necessary services provided by individuals and/or entities licensed to practice medicine in Pennsylvania and contained accurate information to obtain reimbursement.

122.   This belief was mistaken because the bills submitted to State Farm represented services provided by individuals and entities who were both unlicenced to practice medicine and ineligible to do so.  Moreover, the CPT codes and supporting documents utilized by defendants were inaccurate and misleading.

123.   State Farm is entitled to recover from defendants, who have been unjustly enriched, in an amount equal to the portions of the payments State Farm made on medical payments, uninsured motorist and liability claims which represented payment for the bills defendants issued.

124.   Additionally, when State Farm paid monies on medical payments, it did so under the mistaken factual belief that defendants were properly billing for services provided.

125.   This belief was mistaken because defendants knew and/or should have known that they were utilizing improper CPT coding for various diagnostic services in order to obtain greater amounts of monies from State Farm.

126.   If State Farm had known the facts set forth in the preceding paragraphs, it would not have reimbursed defendants pursuant to the representations set forth on the billing documentation.

127.   State Farm is entitled to recover from defendants, who have been unjustly enriched, in an amount equal to the portions of the payments State Farm made on medical payments, uninsured motorist and liability claims which represented payment for the fraudulent bills defendants issued.

WHEREFORE, State Farm prays this Court enter judgment in favor of State Farm and against all defendants for an amount exceeding $75,000.00, plus any additional relief this court deems proper.


GOLDBERG, MOORE & MILLER, P.C.


BY: _____
CY GOLDBERG, ESQUIRE
Attorney for Plaintiffs

JS 44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I (a) PLAINTIFFS

State Farm Mutual Automobile
Insurance Company
State Farm Fire and Casualty
Insurance Company

**DEFENDANTS**

Midtown Medical Center, Inc.
Tabor Chiropractic, Inc.
Ronald Nestel, Simon Fishman,
Frank Solomon, D.C., Paul Bove, D.C.
and Physicians Management Company, Inc
Philadelphia

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF Bloominton
(EXCEPT IN U.S. PLAINTIFF CASES)    Illinois

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT Pennsylvania
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Cy Goldberg, Esquire
GOLDBERG, MOORE & MILLER, P.C.
121 South Broad Street
Suite 1500
Philadelphia, PA  19107

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government
Plaintiff

☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government
Defendant

☒ 4 Diversity
(Indicate Citizenship of
Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

18 U.S.C. Section 1964

## V. NATURE OF SUIT (PLACE AN x IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury – Med Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury – Product Liability | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R R & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 650 Airline Regs | ☐ 820 Copyrights | ☒ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☒ 370 Other Fraud | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U S Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl Ret Inc Security Act | ☐ 871 IRS – Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Other | | | |

## VI. ORIGIN (PLACE AN x IN ONE BOX ONLY)

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
another district
(specify)

☐ 6 Multidistrict
Litigation

☐ 7 Appeal to District
Judge from
Magistrate
Judgment

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

**DEMAND $**

Check YES only if demanded in complaint:
**JURY DEMAND:** ☒ YES ☐ NO

## VIII. RELATED CASE(S) (See instructions)
IF ANY    None

JUDGE _____ DOCKET NUMBER _____

DATE
9/19/02

SIGNATURE OF ATTORNEY OF RECORD

UNITED STATES DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

```
State Farm Mutual Automobile    :        CIVIL ACTION
Insurance Company, et al.       :
              v.                :
Midtown Medical Center, Inc., et al.
                                :        NO.
```

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a)  Habeas Corpus -- Cases brought under 28 U.S.C. §2241 through §2255.                                     ( )

(b)  Social Security -- Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.    ( )

(c)  Arbitration -- Cases required to be designated for arbitration under Local Civil Rule 53.2.              ( )

(d)  Asbestos -- Cases involving claims for personal injury or property damage from exposure to asbestos.                                              ( )

(e)  Special Management -- Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)                            (XX)

(f)  Standard Management -- Cases that do not fall into any one of the other tracks.                          ( )

---

9/17/02
**Date**

_____
**Attorney-at-law**
Cy Goldberg, Esquire

_____
**Attorney for** Plaintiffs

(Civ. 660) 7/95

# UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: _Bloomington, Illinois_

Address of Defendant: _Pennsylvania_

Place of Accident, Incident or Transaction: _Pennsylvania_

(Use Reverse Side For Additional Space)

Does this case involve multidistrict litigation possibilities?   Yes ☐   No ☒

*RELATED CASE, IF ANY:*

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☐   No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?   Yes ☐   No ☒

**CIVIL: (Place ✔ in ONE CATEGORY ONLY)**

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☒ All other Federal Question Cases
    (Please specify)   RICO

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☒ All other Diversity Cases
   (Please specify)   RICO

## ARBITRATION CERTIFICATION
*(Check appropriate Category)*

I, _____, counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: _____   _____   _____

Attorney-at-Law            Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _9/19/02_   _____

TOTAL P.02