| | |
|---|---|
| **STATE FARM MUTUAL AUTOMOBILE** : | |
| **INSURANCE COMPANY, ET AL.** : | |
|     **Plaintiffs,** : | |
| : | **CIVIL ACTION NO. 02-7389** |
| v. : | |
| : | |
| **MIDTOWN MEDICAL CENTER INC.,** : | |
| **ET AL.** : | |
|     **Defendants**. : | |

### MEMORANDUM AND ORDER

**Tucker, J.**                                                                                **October 29, 2007**

      Presently before this Court is Defendant Midtown Medical Center and Physician Management Company Inc.'s Post-Trial Motion for Judgment as a Matter of Law (Doc. 363). For the reasons set forth below, upon consideration of Defendant's Motion and Plaintiffs' Responses (Docs. 363 & 424), this Court will deny Defendant's request. It is further decreed that the demand for a new trial is denied.

      A jury trial of this matter commenced on January 31, 2006 and concluded on February 16, 2006. The jury returned a unanimous verdict against all Defendants on all counts as follows: Ron Nestel in the amount of $2,246,246.00; Simon Fishman in the amount of $2,246,246.00; Frank Solomon, D.C. in the amount of $1,140,950.00; Midtown Medical Center, Inc. in the amount of $356,544.00; Physicians Management Company, Inc. in the amount of $784,400.00; and Tabor Chiropractic Center, P.C. in the amount $356,544.00.

### BACKGROUND

      From the evidence of record taken in a light most favorable to the non-moving party, the pertinent facts are as follows. Plaintiffs State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Insurance Company ("State Farm") are Illinois corporations duly

organized and licensed to engage in the writing of automobile insurance policies in Pennsylvania. State Farm provides insurance coverage to its customers for, *inter alia*, medical payments, uninsured motorist benefits, underinsured motorist benefits and liability for bodily injury arising out of automobile accidents.

Generally, Plaintiffs alleged that during all relevant times, the Defendants, their agents and employees, without the knowledge and consent of State Farm, agreed and conspired together to devise and participate in a scheme to defraud State Farm by means of false and fraudulent representations. Compl. ¶ 19. This scheme began when Defendants Simon Fishman and Ronald Nestel established and operated the Midtown Medical Centers ("Midtown"). Thereafter, Defendants Nestel and Fishman opened the Tabor Chiropractic Center, P.C. ("Tabor") and established Physicians Management Company, Inc. ("Physicians Management").

Plaintiffs state that Fishman and Nestel owned, operated, controlled and managed Midtown and Tabor although neither was licensed or eligible to be licensed in the practice of chiropractics, physical therapy or medicine. Thus, Nestel and Fishman allegedly engaged in the practice of medicine without a license in violation of the Medical Practice Act, the Chiropractic Practice Act, and the Business Corporation Law.

As part of the Defendants' conspiracy and scheme to defraud State Farm, the Plaintiffs claimed the following: (1) Nestel and Fishman recruited individuals who had been in accidents to obtain purported medical treatment at Midtown and/or Tabor; (2) many of the medical examinations, physical therapy and other treatments allegedly provided to these individuals at Midtown and/or Tabor were, in fact, never performed, and some concerned areas of the body not injured; (3) many of the examinations with the consulting physicians were, in fact, billed in a

manner that inaccurately described the service level for the purpose of securing a higher reimbursement from State Farm, sometimes referred to as "upcoding"; (4) payments made by State Farm were, without the knowledge or consent of State Farm, divided between Defendants and the consulting doctors under an unapproved fee arrangement; (5) Defendants hired employee chiropractors, physicians and other non-physician individuals to provide medical treatment, including diagnostic testing, which was billed as if provided by a chiropractor or physician; and (6) false and fraudulent medical reports, bills and other records were prepared by Defendants and sent to State Farm, sometimes by U.S. mail, to obtain payment on behalf of Midtown/Tabor and the other Defendants.

Between 1998 and the commencement of the action, State Farm averred that it paid out over $213,193.00 on medical payments in which bills of Midtown and Tabor were submitted, some by U.S. mail, as part of individual claimants' damages. Compl. ¶ 45. Also, between 1998 and September 2002, State Farm avers that it paid out over $630,554.00 on medical payments in which bills and records of Midtown and Tabor were submitted, some by U.S. mail, as part of individual claimants' damages. Compl. ¶ 47. The billing submitted by Defendants contains fraudulent misrepresentations intended to extract payments from State Farm. State Farm relied upon the billing in making those payments to Defendants. Plaintiffs brought this cause of action for fraud, the fraudulent corporate practice of medicine, unjust enrichment, restitution, and violations of the civil RICO statute.

## **LEGAL STANDARD**

In reviewing a motion for judgment as a matter of law pursuant to Federal Rule Civil

Procedure 50(b) should be granted if, "viewing the evidence in the light most favorable to the non-movant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury could reasonably find liability." Coleman v. Kaye, 87 F.3d 1491, 1497 (3d Cir. 1996). However, a mere scintilla of evidence is not enough. Walter v. Holiday Inns, Inc., 985 F.2d 1232, 1238 (3d Cir. 1993). Instead, there must be sufficient "evidence upon which the jury could properly find a verdict for that party." Lightning Lube v. Witco Corp., 4 F.3d 1153, 1166 (3d Cir. 1993). The court must determine whether there is sufficient evidence upon which a reasonable jury could properly have reached its verdict. "The question is not whether there is literally no evidence supporting the unsuccessful party, but whether there is evidence upon which a reasonable jury could properly have found its verdict." Gomez v. Allegheny Health Services, Inc. 71 F.3d 1079, 1083 (3d Cir. 1995).

Under Federal Rule of Civil Procedure 59, the standard for granting a new trial is if "the verdict is contrary to the great weight of the evidence or errors at trial produce a result inconsistent with substantial justice." Sandrow v. U.S., 832 F. Supp. 918 (E.D. Pa. 1993). A new trial should only be granted "where a miscarriage of justice would result if the verdict were to stand." Olefins Trading, Inc. v. Han Yang Chemical Corp., 9 F.3d 282, 289 (3d Cir. 1993).Within limitations, the granting of a "new trial is committed to the sound discretion of the district court." Bonjorno v. Kaiser Aluminum & Chemical Corp., 752 F.2d 802, 812 (3d Cir. 1984). A new trial may be granted if the verdict is contrary to the great weight of the evidence if there are prejudicial statements made by counsel, or if the Court finds that "substantial errors were made in the admission or rejection of evidence or the giving or refusal of instructions." Roebuck v. Drexel University, 852 F.2d 715, 736 (3d Cir. 1988); Lind v. Schenley Industries, Inc., 278 F.2d 79, 90

(3d Cir. 1960); and Northeast Women's Center, Inc. v. McMonagle, 689 F. Supp. 465, 468 (E.D. Pa. 1988).

A new trial cannot be granted, however, merely because the court would have weighed the evidence differently and reached a different verdict. Markovich v. Bell Helicopter Textron, Inc., 805 F. Supp. 1231, 1235 (E.D. Pa. 1992). Previous courts have warned that "a court must refrain from interfering with the jury's verdict unless it is clear that the jury has reached a seriously erroneous result. Farra v. Stanley-Bostitch, Inc. 838 F. Supp. 1021, 1026 (E.D. Pa. 1993).

## DISCUSSION

**A. Jury Charges**

Defendant claims the Court abused its discretion by providing supplemental instructions to the jury. Federal Rule of Civil Procedure 51 (b)(3) states that the Court "may instruct the jury at any time after trial begins and before the jury is discharged." FED.R.CIV. P. 51(b)(3). The Court read the following charge to the jury:

> Some of the people who may have been involved in these events are not on trial. This does not matter. There is no requirement that all alleged members of a conspiracy be sued together in one proceeding. Nor is there any requirement that the names of the other alleged conspirators be known. A plaintiff can sue a defendant and allege a conspiracy involving people whose names are not known, as long as the plaintiff can prove that the defendant conspired with one or more of them. Whether they are named or not does not matter.

In its closing, Defendants made reference to the un-named co-conspirator, Samuel Fishman. Prior to trial, the issue of joinder was already addressed by this Court in a previous motion (Doc. 492). Defendant's decision to reference the un-named party in its closing does not preclude the Court from providing clarifying instructions to the jury to ensure that the issues are not confused.

The instruction was not a supplemental one but was given by the Court as part of the total

instructions after hearing the closing argument of the attorneys. The Court appropriately exercised its discretion under Fed. R. Civ. P. 51(b)(3). The instructions correctly stated the law on the issue of un-named co-conspirators. Thus, the Court's accurate statement of the law is not an abuse of discretion in response to Defendant's choice to rely upon the un-named party, who under the law, was irrelevant to the jury's ability to determine liability of the named parties.

The Defendant's claims, that the Court's instructions about the un-named co-conspirator was an abuse of discretion fails.

**B.  Issues Placed before the Jury**

   **1.  Statute of Limitations**

The statute of limitations issue placed before the jury did not, as Defendant argues, hinge upon a matter of law. Rather, the ultimate determination was one of fact, which is appropriate for the jury's consideration.

Both parties agree that fraud claims are subject to a two-year statute of limitations and that such limitations are a matter of law. 42 PA. CONS. STAT. ANN. §5524(7). However, the application of the statute of limitations turns upon the fact-based inquiry of whether or not the evidence rose to a level at which Plaintiffs discovered or should have discovered the elements of the fraud claim. As noted in the DeMartino v. Albert Einstein Medical Center, Northern Divsion opinion, "[t]he question of whether a plaintiff has exercised due diligence in discovering his own injury is usually a question for the jury." 460 A.2d 295, 304 (Pa. Super. Ct.1983). Thus, it was appropriate for the Court to submit the issue to the jury.

It is clear that a factual question was presented. Defendant's interpretation of the

submitted memo is simply that, an interpretation.  It was for the jury to decide if Plaintiffs knew or should have known of a cognizable claim against Defendants before September 20, 2000, which turns upon the facts.  For that reason, the Defendant's argument fails.

### 2. Effect on Interstate Commerce

Defendant argues that Plaintiffs failed to demonstrate the effect of its actions upon interstate commerce.  Absent such a showing, an element of the Plaintiff's RICO claim would fail.  Additionally, Defendant claims the Court failed to offer proper jury instruction on the matter, leaving the jury to improperly decide upon the issue of interstate commerce.

Federal Rule of Civil Procedure 51(a)(1) provides that, not only may a party file and render to other parties written requests about jury instructions, but it "may file requests for instructions on issues that could not reasonably have been anticipated at an earlier time for requests set under Rule 51(a)(2)(A).  That the Defendant failed to raise the issue at the appropriate time did not obligate the Court to compensate for such oversight in its instructions to the jury unless failure to do so would leave a consideration with the jury lacking properly clarity.[1]

Contrary to Defendant's assertions, the testimony presented was sufficient to establish that Defendants' scheme involved an element of interstate commerce.  No requests for a further jury instruction on interstate commerce was requested at any time; nothing was submitted at the pre-trial conference nor at the charging conference.  Likewise, no objection was made to the charge once given to the jury.  Such failure leads to waiver of objection to jury charge.

---

[1] The jury instruction read:  Plaintiff brings two (2) RICO claims.  One under Section 1962(c) and one under Section 1962(d). I will instruct you on Section 1962(c) first.  Under Section 1962(c), Plaintiff must establish each of the following elements by a preponderance of the evidence:  (1)  the existence of an enterprise which affected interstate or foreign commerce; (2) Defendant was employed by or associated with the enterprise; (3) Defendant conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs; and (4) the participation was through a pattern of racketeering activity.

### 3. Voluntary Payment Doctrine

The voluntary payment doctrine prevents the recovery of money willfully paid as a result of a mistake of law pertaining to the interpretation of a contract. <u>Acme Markets, Inc. v. Valley View Shopping Ctr., Inc.</u>, 493 A.2d 736, 737 (Pa. Super. Ct. 1985). According to Defendant, the Court erred in allowing the jury to consider Counts VI and VII of the claim if the payments were mistakenly made and not the result of fraudulent activity by Defendant. They argue that State Farm's voluntary decision to pay the claims trumps its ability to sue for restitution or similar relief. <u>Coregis Ins. Co. v. Law Officer of Carole F. Kafrissen</u>, 140 F.Supp.2d 461, 464 (E.D.Pa. 2001)(barring claim under voluntary payment rule where insurer paid legal malpractice plaintiff under mistaken belief that failing to settle claim could expose it to greater liability). Per Defendant, under the voluntary payment doctrine, if State Farm mistakenly paid Defendant, it is not entitled to the return of the money.

Defendant correctly states the rulings of the cases cited in support of its argument, which all concern mistakes of law. However, the issue pertinent to the current matter is not analogous but an issue of fraud. Thus, the doctrine is inappropriate for the present matter. The central considerations are what treatments were provided and whether proper coding was used and the actual treatment. Such issues are based in fact and appropriately matters for a jury's consideration.

Federal Rule of Civil Procedure 8(e)(2) allows a party to set forth as many individual claims available regardless of consistency. In this case, the Court agrees that Plaintiffs were allowed under the rules to proceed with Counts VI and VII regardless of consistency with Counts

8

I-V.  Further, the Court also agrees with Plaintiff's contention that the billing issues related to the relief sought were based in fact, not law.  Therefore, the voluntary payment document is inapplicable in the present case as State Farm's payments were based upon mistakes of fact and not law.

Defendant's assertions under the voluntary payment doctrine fail.

## B. Remaining Trial Issues Raised in Defendants' Motion

### 1. Fifth Amendment Privileges

Defendant argues next that the Court abused its discretion in permitting testimony of non-party witnesses asserting her Fifth Amendment rights to be questioned about a suspicious fire on Defendant's premises.  They further claim that precluding Defendant from asserting lack of prosecution resulted in an abuse of the Court's discretion.

Neither parties dispute that imputation of a third-party's Fifth Amendment assertion to another party is appropriate when a relationship of loyalty is established. The Court agrees that bright line rules are not as helpful as having the party calling for inference justify the imputation. Libutti v. United States, 107F.3d 110, 122 (2d Cir. 1997).  However, the Court does not agree that Plaintiffs "did not even make a cursory attempt to justify the imputation."   The record demonstrates a sufficient nexus between Defendant Simon Fishman and his father's longtime friend and his employee, Ron Nestel.  Additionally, the working relationship between Ms. Mozo's company and the Defendant's company are not so attenuated that imputation would result in an abuse of discretion.  In accordance, Defendant's claims fail.

### 2. Lack of Prosecution

On the issue of the lack of prosecution, the Court agrees with Plaintiff's assertion that the

probative value of such information was substantially outweighed by the danger of unfair prejudice. FED.R.EVID. 401 (defining relevant evidence as that having "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"); FED.R.EVID. 403 ("[E]vidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."). See also Krueger v. State Farm Fire & Casualty, Co., 510 N.W.2d 204, 210-211 (Minn. Ct. App. 1993)(holding that the issue of evidence of acquittal or lack of prosecution is admissible). The standards of proof are different between civil cases and criminal cases and allowing Defendant to rely upon the lack of prosecution could be misleading to the jury and influence them to apply an inappropriate standard to the present case. Dawson v. Miller, 594 So.2d 970, 972 (La. Ct. App. 1992)("The difference is between preponderance of the evidence in civil cases and proof beyond a reasonable doubt in criminal cases.")

      The granting of Plaintiffs' Motion *in Limine* to preclude Defendant from making reference to the lack of prosecution was not an abuse of discretion nor did it cause harmful error upon Defendant's case. While Federal Rule of Evidence 609 provides for the use of evidence of past criminal convictions to impeach witness credibility, it does not call for the opposite–lack of criminal prosecution–as a means to rehabilitate a witness. Many factors influence the decision of whether to proceed with a criminal prosecution. However, it is generally the opinion of a government official not participating in this proceeding. The information would have the effect of being more misleading than probative, thus it was not permitted. FED.R.EVID. 609.

### 3. Proximate Cause

Defendant argues that Plaintiffs failed to prove proximate cause between its third party damages claims and Defendant's activities. Plaintiffs counter that proximate cause exists when "the RICO plaintiff's interest are the direct target of the alleged scheme… ." <u>Northwestern Human Servs., Inc. v. Panaccio</u>, 2004 U.S. Dist. LEXIS 19147 at *15-16. *18-19 (E.D.Pa. 2004)(quoting <u>Holmes</u>, 503 U.S. 258, 268 (1992)). The Court agrees that the Plaintiffs were the target of the scheme thereby creating a direct relation between the injuries asserted and the injurious conduct. Defendant's actions were a substantial factor in the events resulting in Plaintiffs' injuries. As noted in <u>Hecht</u>, a RICO act proximately causes injury if it was a "substantial factor in the sequence of responsible causation, and if the injury is reasonably foreseeable or anticipated as a natural consequence." <u>Hecht v. Commerce Clearing House, Inc.</u>, 897 F.2d 21, 23 (2d Cir. 1990)(citing <u>O'Malley v. O'Neill</u>, 887 F.2d 1557, 1561 (11th Cir. 1989)).

Thus, Plaintiffs adequately presented proximate cause and Defendant's assertion fails.

### D. Summary Evidence

Defendant's motion states that the testimony of James Hopkins amounted to impermissible summary testimony. Taking the facts in the light most favorable to the non-moving party, Mr. Hopkins did review the spreadsheets upon which his testimony was based. Federal Rule of Evidence 1006 permits summary testimony when the underlying documents are made available to the opposing party for review. Fed.R.Evid. 1006; <u>Trout v. Pa. R.R. Co.</u>, 300 F.2d 826, 830 (3d Cir. 1962); <u>Pritchard v. Liggett & Myers Tobacco Co.</u>, 295 F.2d 292, 300-01

(3d Cir. 1961). If the documents were not produced for the Defendant, the appropriate course of action would have been a request for a motion to compel and based on the extensive record of this case[1] both parties are fully aware of the available recourse for document production.  Defendant's argument does not suggest that the admission of the testimony was improper because the Plaintiffs' failed to produce documentation after being compelled by the Court to do so.  For these reasons, Defendant's claim is denied.

**E.  Damages**

Defendant charges that the Court interpreted the jury's verdict as a cumulative amount and added all of the sums on each count.  Defendant believes this amounted to double recoveries on some Counts and that it was error for the Court to substitute its findings for the jury's findings.  Defendant also takes issue with the awarding of punitive damages to the Plaintiffs.

In its motion, Defendant argues that Plaintiffs' monetary awards for Counts I and III[2] the monetary award for Counts IV and V[3] are incorporated within the other, thus amounting to a double recovery.  Defendant argues that Plaintiffs cannot recover both at law for their injuries and in equity for unjust enrichment.  Additionally, Defendant asserts that the award is not supported by the record.

Plaintiffs sought damages in the amount of $1,050,942.77 for statutory insurance fraud, common law fraud, civil RICO violations, unjust enrichment and restitution for payments based on

---

[1] The following documents all deal with motions to compel evidence by the parties in the case at hand:  32, 33, 34, 36, 37, 38, 39, 42, 47, 48, 51, 57, 59, 60, 62, 70, 71, 79-84, 87, 89-97, 103-105, 109, 121, 125, 127-28, 130, 131, 136-37, 139-41, 143-44, 146-156, 172, 181, 183, 200, 206-07, 210, 222, 228-29, 233, 243, 247, 251, 252, 468-70, 476, 481, 484-85, 488-491, 494, 496-499, 502, 504, 511, 516, 533-34, 537, 543-45, 547-48.  Only documents 156 and 166 refer to Mr. Hopkins.  If there were further issues, the parties were clearly aware of how to continue to file motions to compel the opposition to produce the requested evidence.
[2] Common law fraud and statutory insurance fraud.
[3] RICO claims brought pursuant to 18 U.S.C. §1962(c) for damages and 1962(d) for conspiracy, respectively.

inaccurate medical records and billing, and punitive damages if any Defendant's conduct was found to be outrageous. The jury returned a unanimous verdict against all Defendants on all counts and awarded compensatory damages as follows: Ronald Nestel in the amount of $331,046.00; Simon Fishman in the amount of $331,046.00; Frank Solomon, D.C. in the amount of $168,150.00; Midtown Medical Center, Inc. in the amount of $52,544.00; Physicians Management Company, Inc. in the amount of $115,600.00; and Tabor Chiropractic Center, P.C. in the amount $52,544.00.  Judgment was entered on February 22, 2006 (Doc. 327).

Drawing all reasonable inferences in favor of the non-moving party, there is a reasonable basis to uphold the award.  The compensatory award reflects an attempt by the jury to allocate the total damages award against all Defendants, split four (4) ways equally among the Plaintiffs' (1) statutory insurance fraud claim in the amount of $262,734.00; (2) common law fraud claim in the amount of $262,734.00; (3) civil RICO violations claim in the amount of $262,734.00; and (4) unjust enrichment and restitution claim for payments based on inaccurate medical records and billing in the amount of $262,734.00.  The jury interrogatories further reflect a slight deviation in this mathematical pattern, where the jury's division of damages between Plaintiffs' civil RICO damages and RICO conspiracy is $131,364.00 for each claim, totaling $262,728.00 for the RICO claims taken together.  While this Court will not suggest that the jury intended to allot $131,367.00 rather than $131,364.00 to its bifurcation of Plaintiffs' RICO claims, the Court is persuaded that the jury's crafted award, viewed as a whole, is reasonable and fully supported by the record.

### F. Attorneys Fees and Costs

Defendant argues that it was error for the Court to grant Plaintiffs' Motion for Attorneys' Fees and Costs because of the lack of evidence to support the amount of the award.  Plaintiffs filed

their Complaint on September 20, 2002. The twelve-day jury trial of this matter concluded three and a half years later on February 16, 2006.  The civil docket in this matter consists of over 350 entries, and Defendant's offered in their Motion to Alter or Amend Jury Verdict of Defendants, Midtown Medical Center and Physicians Management Company, Inc. (Doc. 349) that defense costs were in excess of $850,000 at the close of litigation.  This Court remains persuaded that Plaintiffs' request is both reasonable and appropriate to the nature, extent, and duration of this litigation.

The Court remains satisfied that the affidavit provided by Plaintiffs (Exhibit A) demonstrated that the attorneys' billing rates are within community standards and that the legal work was reasonable and necessary.  Further, when challenging the reasonableness of attorneys' fees, the burden is upon the opposing party "to challenge by affidavit or brief, with specificity, to give fee applicants notice, the reasonableness of the requested fee."  Rode v. Dellaciprete, 892 F.2d 1177 (3d Cir. 1990).  While Defendant's motion highlights what they believe to be the shortcomings of Plaintiff's evidence, they failed to meet their burden as the opposing party.

## **CONCLUSION**

For the foregoing reasons, this Court will deny Defendant's Post-Trial Motion for Judgment as a Matter of Law and Demand for a New Trial.  An appropriate Order follows.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, ET AL.     Plaintiffs, <br><br> v. <br><br> MIDTOWN MEDICAL CENTER INC., ET AL.     Defendants. | : <br> : <br> : <br> :   CIVIL ACTION NO. 02-7389 <br> : <br> : <br> : <br> : <br> : |

## ORDER

      **AND NOW**, this ____ day of October, 2007, upon consideration of Defendants Midtown Medical Center and Physician Management Company, Inc.'s Motion for Judgment as a Matter of Law, New Trial, and/or Relief for Judgment Pursuant to Federal Rules of Civil Procedure 50(b), 59(b), 60(b)(6), and Plaintiffs' Response, **IT IS HEREBY ORDERED AND DECREED** that Defendants' Motion is **DENIED**.

                                                                 **BY THE COURT**

                                                                 **/s/ Petrese B. Tucker**
                                                                 _____

                                                                **Hon. Petrese B. Tucker, U.S.D.J.**